HOUSTON BELT & TERMINAL RY. CO. v. ASHE.

(Court of Civil Appeals of Texas. Galveston. May 2, 1913. Rehearing Denied June 5, 1913.)

1. LIMITATION OF ACTIONS (§ 55*)—ACCRUAL OF RIGHT.

Where defendant's lessor laid its track in the street in front of plaintiff's residence, but plaintiff was not damaged until the track was leased by defendant, the statute of limitations did not begin to run until the beginning of the damage; and hence plaintiff's action is not barred because of the long continued use by defendant's lessor.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 299–306; Dec. Dig. § 55.*]

2. RAILROADS (§ 114*)—INJURIES FROM MAINTENANCE—FINDINGS—CONFLICTS.

In an action for damages for the maintenance of tracks in a street in front of plaintiff's property, which caused a depreciation in its value, the jury answered special issues 1 and 2, which were whether the permanent operation by defendant caused greater damage than the operation by defendant's lessor, and whether the increased use caused greater depreciation, in the affirmative, and fixed the amount of the depreciation, and also answered special issue 5, whether, leaving out of consideration any previous use of the tracks, defendant's use of the tracks caused a depreciation, in the affirmative, fixing the same amount of damage. Special question 4, whether the method of the operation since the defendant began to use the tracks would cause an increased damage, was answered in the negative, and question 4½, which was as to the amount of the future damage, was not answered. Held, that the answers to the special questions and issues were not conflicting, and supported a judgment for plaintiff; question 4 referring to the manner of the operation of the trains, and not to the increased operation.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 365–371; Dec. Dig. § 114.*]

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Action by S. S. Ashe against the Houston Belt & Terminal Railway Company and others. From a judgment for plaintiff, the named defendant appeals. Affirmed.

Andrews, Ball & Streetman, of Houston, for appellant. S. H. Brashear and Ellis P. Collins, both of Houston, for appellee.

McMEANS, J. S. S. Ashe, plaintiff, brought this suit against the Houston Belt & Terminal Railway Company, the Trinity & Brazos Valley Railway Company, the Gulf, Colorado & Santa Fé Railway Company, the Beaumont, Sour Lake & Western Railway Company, the St. Louis, Brownsville & Mexico Railway Company, and the Chicago, Rock Island & Gulf Railway Company, defendants, to recover damages for depreciation in value of certain property owned by him abutting upon Mary street, in the city of Houston, alleged to have been caused by the operation of trains, engines, and cars over a railway track laid in said street. The case was submitted to a jury upon special issues, and upon a return of the verdict a judgment was on motion of the plaintiff entered in his favor against the Houston Belt & Terminal Railway Company for $1,041, and in favor of the other defendants. From the judgment so rendered against it, the defendant Houston Belt & Terminal Railway Company has appealed.

The plaintiff alleged, in substance, that he was the owner of lots Nos. 3, 4, 5, and 6, in block No. 7, in the D. Gregg addition to the city of Houston, fronting 150 feet on Mary street, and having a depth of 150 feet, whereon were situated several residence houses and appurtenances; that in the year 1907 the defendant Gulf, Colorado & Santa Fé Railway Company, which had for some years maintained a line of railway upon said Mary street in front of plaintiff's premises, using same as a "transfer" track, abandoned its use, control, possession, and management of said railroad, and sold, conveyed, and delivered possession thereof to the defendant Houston Belt & Terminal Railway Company; that in said year 1907 the defendant Houston Belt & Terminal Railway Company established a terminal and belt railway system in and around the city of Houston for the purpose of furnishing terminal facilities to a large number of railroad companies, and established also a large depot grounds and switchyards in said city, and connected and completed the various parts of its system by using as a part thereof the said Santa Fé line of railway on Mary street; that the use made of said railway on Mary street during the time when it was under the control of the Gulf, Colorado & Santa Fé Railway Company was very light and worked but very little, if any, harm or damage to plaintiff's premises, and that at no time

prior to the acquisition and use of said railway by said Terminal Company was any notice given or use made of said line of railway which would reasonably or did in any wise indicate that any greater or additional burden would be placed upon said street by said Gulf, Colorado & Santa Fé Railway Company, its successors or assigns, than the ordinary use of said line of railway for the purposes of said company alone, nor was there anything to suggest any contemplation of a belt or terminal railway for the bringing of trains of other railroads over said track; that in said year 1907 the said Houston Belt & Terminal Railway Company by an arrangement with the other defendants named furnished and provided the said track on Mary street as a part of the facilities for the trains of said other companies, it, the said Houston Belt & Terminal Railway Company, exclusively controlling, possessing, managing, and using said line of railway on Mary street for the uses of said other railway companies and itself; that the use of and operation of said track by each of said defendant railway companies, and the damage resulting therefrom, was equal to, if not greater than, the use of and operations on said track by the Gulf, Colorado & Santa Fé Railway Company before the changed conditions and operations arose under the control and ownership of the Houston Belt & Terminal Railway Company, and that such aggravated and additional use and servitude would, and could, never have been compensated by any assessment of damages based upon the use and operation by the Gulf, Colorado & Santa Fé Railway Company, and that as a direct and proximate result of the operations and uses of said track as a part of said terminal system, and of such changed conditions and circumstances, the plaintiff's property became and was worth the sum of $10,000 less immediately after such changed conditions, operations, and uses began than the same was worth immediately theretofore.

The defendant, after pleading the general denial, further pleaded that since about the year 1883 the Gulf, Colorado & Santa Fé Railway Company had operated trains, engines, and cars over said Mary street track, and had pursued thereupon and thereover its business of carrying freight and passengers, and that to the extent that it may not have done so it nevertheless possessed the right to do so under the ordinance of the city council of the city of Houston by virtue of which the said track was constructed; that said use of said track by the Gulf, Colorado & Santa Fé Railway Company had been continuous and extensive, and great numbers of trains, engines, and cars had been constantly operated over said track, and that the operations carried on thereupon and thereover by the defendants were not different in kind from the operations theretofore carried on by the Gulf, Colorado & Santa Fé Railway Company, and that if different in degree were less in degree and by no means as extensive as the operations theretofore carried on by the Gulf, Colorado & Santa Fé Railway Company, and that said track and street were in fact subjected to a less and decreased servitude than the same were subjected to during the time when the defendant the Gulf, Colorado & Santa Fé Railway Company operated its trains, engines, and cars thereover, and that by the construction of said East line of railway by the defendant Houston Belt & Terminal Company and the use thereof by all of the defendants, including the Gulf, Colorado & Santa Fé Railway Company over said track had been practically eliminated, and at all events greatly lessened and decreased, and that plaintiff's property, if affected at all by said operations, was increased instead of being decreased in value. The defendant further pleaded the statute of limitations of two and four years in bar of any recovery by plaintiff on account of depreciation.

Special issues 1 and 2, submitted to the jury, and the answers thereto, are as follows:

"(1) Was such part as was permanent of the operation of the Houston Belt & Terminal Railway Company and its sublessees on Mary street, just after they began their operations, greater as to the effect on plaintiff's property by vibration, noises, smoke, odor from burning fuel, and interference with ingress to and egress from the premises, than the effect, if any, on said property from the operation on Mary street under the management of the Gulf, Colorado & Santa Fé Railway Company immediately before the operations on said street by the Houston Belt & Terminal Railway Company and its sublessees?"

To this question the jury responded: "It was greater under the Houston Belt & Terminal Company's management."

"(2) If you have answered the first question in the affirmative, you will then state whether or not you find that such greater use caused the plaintiff's premises to depreciate in their market value just after such operations began, as compared with the value under the Gulf, Colorado & Santa Fé Railway Company's operation and management just before that time, and, if so, you will state the amount of such depreciation."

To this question the jury answered: "Yes; $1,041.00."

Appellant complains by its first assignment of error that "the court erred, to the prejudice of this defendant, in entering judgment herein in favor of the plaintiff against this defendant, and in refusing to enter judgment in this defendant's favor, for that under the undisputed evidence in the case and the findings of the jury in response to the special issues submitted to them, and under

the undisputed evidence, regardless of said findings, the operations of the Houston Belt & Terminal Railway Company over the track in question were not such as to impose, and did not in fact impose, a greater burden thereupon, or upon said street or the abutting property, and there was no different use of said track by the Houston Belt & Terminal Company from the use to which same was theretofore and then subjected by the Gulf, Colorado & Santa Fé Railway Company, and plaintiff's cause of action, if any he ever had, arose many years before the institution of this suit, and was barred by the two-year statute and four-year statute of limitations of this state, which were pleaded by the defendant herein in bar of plaintiff's action, and plaintiff was entitled to no recovery against this defendant, but, on the contrary, judgment should have been rendered in this defendant's favor."

By its several propositions under this assignment appellant contends that, under the undisputed evidence and under the findings of the jury in response to the special issues submitted to them, the operations of the Houston Belt & Terminal Railway Company over the track on Mary street did not amount to an imposition of an additional servitude upon said street or the property abutting thereon, and that, therefore, plaintiff's cause of action for damages was barred by the statute of limitations of two and four years. It was shown by the testimony that about the year 1883 the Gulf, Colorado & Santa Fé Railway Company, pursuant to authority granted to it by the city council of the city of Houston, constructed a railway track along and upon Mary street and in front of plaintiff's property, over which it operated engines, cars, and trains, and so continued until about July 1, 1907, when it leased said track, together with tracks upon other streets, to the Houston Belt & Terminal Railway Company, which thereafter assumed control thereof and itself operated engines, cars, and trains thereover. The evidence justifies the finding, and in deference to the verdict of the jury we find, that after the Houston Belt & Terminal Railway Company assumed control and began operations over the track in question a greater number of engines and cars and trains were run over said track, and that the noise, vibration, and odor from burning fuel caused by such operations were greatly intensified, and as the direct and proximate result thereof plaintiff's property was depreciated in its market value to the extent of $1,041 as found by the jury.

[1] It may be conceded for the purpose of this opinion that the Gulf, Colorado & Santa Fé Railway Company in leasing the track in question to the Houston Belt & Terminal Railway Company did not thereby surrender its right to the use thereof, but that it continued to use the same conformably to the terms of the lease contract as its necessities required. But it is indisputably shown by the evidence, we think, that the control of operations thereover was placed by the lease contract in the Houston Belt & Terminal Railway Company, and that such use of the track as was made by the Gulf, Colorado & Santa Fé Railway Company was only permissive under its terms. The contention of appellant, as we understand it, is simply this: That as the track in question was constructed by the Gulf, Colorado & Santa Fé Railway Company in 1883, and that as that company then began and continued the operation of trains, cars, and engines thereon, and as such operations were productive of such noises, vibrations, and interference with ingress and egress as the plaintiff now claims is the cause of the depreciation of his property due to the operations of the Houston Belt & Terminal Railway Company, limitation began to run at the time the track was constructed, and the operations begun, and that plaintiff's cause of action is now barred by the statute of limitations of two and four years, notwithstanding the depreciation was caused by the operations of the Houston Belt & Terminal Railway Company and not by the operations of the Gulf, Colorado & Santa Fé Railway Company. This contention is based on the theory that the lease of the track to, and the operations thereover conducted by, the Houston Belt & Terminal Railway Company, did not impose any additional servitude upon the street or upon plaintiff's property abutting thereon.

The testimony failed to show, we think, that plaintiff's property suffered depreciation in its market value by reason of the operations by the Gulf, Colorado & Santa Fé Railway Company over the track in question, but does affirmatively show that such depreciation was caused solely by the operations of the Houston Belt & Terminal Railway Company. If we are mistaken in saying that the evidence failed to show any depreciation prior to the beginning of operations by the last named company, and if there was evidence to raise such an issue, the issue was resolved by the jury in favor of the contention that the damage sustained by plaintiff was due to the operations of the defendant company alone, as will be seen by the answer to the fifth question propounded, which, with the answer thereto, is as follows: "(5) Leaving out of consideration any operation at all on Mary street just prior to the beginning of the Houston Belt & Terminal Company's operation, and considering the plaintiff's property as without any railroad operation on Mary street in front of it, did the value of the property become less immediately after the said terminal company began its operations, as a result of such operations, than it was immediately theretofore, and, if so, how much

less?" To which the jury responded: "Yes; $1,041." As then no damage had been sustained by plaintiff until the latter company began operations, it is clear that plaintiff's cause of action did not arise until then; and, as this suit was brought within two years from that time, plaintiff's cause of action was not barred. We think this view is fully sustained by the following cases: Grossman v. Railway, 99 Tex. 641, 92 S. W. 836; Hutcheson v. Railway, 102 Tex. 475, 119 S. W. 85; Railway v. Edrington, 100 Tex. 496, 101 S. W. 441, 9 L. R. A. (N. S.) 988; Schueller v. Railway, 46 Tex. Civ. App. 444, 102 S. W. 922; Railway v. Necco (Sup.) 15 S. W. 1102. Appellant's first assignment is overruled, as is also its second and third which raise substantially the same point.

[2] By its sixth assignment appellant complains of the refusal of the court to grant its motion for a new trial on the ground thereof which asserts that the findings of the jury in response to questions 1, 2, 4, 4½, and 5 are ambiguous, uncertain, conflicting, contradictory, and inconsistent to the extent that it is impossible to determine what the jury's finding in fact was, and that no judgment should have been entered on the verdict in favor of plaintiff and against the defendant. We have set out in this opinion the first, second, and fifth questions. We think it cannot be successfully contended that the answers to these are either conflicting or contradictory. The fourth question is as follows. "(4) Has or has not the character and method of operation of trains along the track by the property since the terminal company began to use the same been such, and will such operation in future likely be such, as to cause an increased damage to the property; that is, has such operation caused, or will it likely cause in future, damages additional to or greater than was caused by the operation of the Santa Fé Railway Company's trains?" To which the jury answered: "It has not and will not." Question 4½ is as follows: "If you have answered the preceding question in the affirmative, what do you find, expressed in money value, to have been the extent of such damage and such future damage?" To this question the jury made no response. It will be seen that by the first and second questions it was sought to be elicited whether the permanent operation of the Houston Belt & Terminal Railway Company was greater as to its effect on plaintiff's property than it was theretofore, and whether this caused a depreciation in its market value, and, if so, the extent of such depreciation, and the jury answered that the effect was greater and caused a depreciation in the market value to the extent of $1,041. The fourth question was propounded to elicit whether the character and method of operation, rather than the increase in the volume of operations had caused or would likely cause damage in the future, and the jury answered that the character and method of operation "had not and will not." We think that the answer was warranted by the evidence, for it was shown that the character of operation—that is, the running of cars, engines, and trains over the track—was the same under both managements, and the method—that is, propelling cars and trains over the track by engines propelled by steam—was the same. We think that, when thus viewed, the answers to the several questions quoted were not conflicting or contradictory, or at least not so flagrantly so as to authorize this court to set aside the judgment rendered on the verdict. The assignment is overruled.

We have carefully examined all of appellant's assignments of error, and do not find reversible error in any of them. The judgment of the court below is affirmed.

Affirmed.