## TEXAS & PACIFIC RAILWAY COMPANY v. SAMUEL FORD.

Decided March 4, 1909.

**1.—Railway—Drainage—Measure of Damages.**

For destroying or depreciating the value of land by causing it to be overflowed, plaintiff may, if the structure creating the overflow is permanent and cannot be abated, recover at once the difference in the value of his land before and after the change in the railroad, the action arising and limitation beginning to run on the change being made. But if the damage was not permanent and immediate, either because the wrong was one which could be abated, or, because injury by overflow was caused only occasionally and at irregular intervals, the action would be for damages for such injuries, accruing as each overflow occurred, and limitation running against each cause of action from its date. The damages would be the value of the land, if rendered valueless, the decrease in value, if permanently injured, or the rental value loss, if the injury was temporary. But in no case could plaintiff recover both for total or partial destruction of the value of the land and for loss of its rental value.

**2.—Same.**

A railway company having filled in a trestle on its roadbed, making culverts insufficient for the drainage, an owner of adjoining land sued for and recovered both damages to the land and an injunction requiring the abatement of the obstruction to the drainage. A charge in such case which permitted the recovery of the rental value of the land during the years plaintiff was prevented by the overflow from using it, and also the depreciation in the value of the land caused by deposits of sand from the overflow was erroneous as allowing double damages.

Appeal from the District Court of Harrison County. Tried below before Hon. W. C. Buford.

*F. H. Prendergast* and *W. L. Hall*, for appellant.—The correct measure of damage was the difference between the rental value of the land before the drain box was put in and its rental value after the drain box was put in. Said charge was further error, because it allowed a recovery both for the rental value and for the damages

occasioned by the deposit of sand. Owen v. Railway, 67 Texas, 682; Gulf, C. & S. F. Ry. v. Helsley, 62 Texas, 506; Trinity & S. Ry. v. Schofield, 72 Texas, 496; Gulf, C. & S. F. Ry. v. Haskell, 4 Texas Civ. App., 550; Dallas & W. Ry. v. Kinnard, 18 S. W., 1062.

*T. P. Young,* for appellee, cited: Railway Co. v. Davis, 29 S. W., 483; Clark v. Dyer, 81 Texas, 343; Railway Co. v. Anderson, 79 Texas, 432; Texas & Pac. Ry. Co. v. Ford, 42 S. W., 589.

WILLSON, Chief Justice.—Appellant's line of railroad ran east and west on an embankment three or four feet high, constructed for the purpose along the south boundary line of a tract of land, containing nine acres, belonging to appellee. The natural lay of the land, appellee contended, caused it to drain south and southeast. When appellant constructed its roadbed in 18— it left an opening about twenty-eight feet long in the embankment, and across the opening constructed a bridge or trestle. The opening so left was sufficient as a passway to the south side of its track for all the water draining to the south and southeast over appellee's land. At a time not certainly fixed by the testimony, but during or between the years 1898 and 1903, appellant removed the trestle spanning the opening left in its roadbed, placed in the opening a drain box or culvert two by three feet in size, and then by filling in the opening with dirt extended the embankment across the same. Appellee contended that the drain box was not sufficient as a passway for water naturally flowing to it over his land, and that because it was not sufficient such water was impounded on his land, whereby it was injured, etc. He commenced an action for damages, and as the measure of the damages he sought to recover alleged in his petition, filed June 28, 1907, as follows: "The plaintiff lost the crops of 1904, 1905, 1906 and 1907 by reason of the fact that he was unable to cultivate said land, because of repeated overflows. The use of the land for each of said years is and was reasonably worth $200 for each year. The plaintiff avers that the land was worth one thousand dollars, and unless the defendant is compelled to put the original trestle or opening in and under the track, or unless it is compelled to put a sufficient ditch down the north side of the track, the land will be destroyed and plaintiff will be damaged $1,000." In a trial amendment filed by appellee March 3, 1908, he alleged that as a result of the waters being so impounded on his land sand had been deposited thereon to a "depth of three feet or more," and then further alleged: "And so the plaintiff avers that before said trestle was filled in the land was worth $1000, and since same and by reason of said filling in and raising the embankment the land has become worthless." The prayer in appellee's petition was for a judgment for the damages suffered by him and for a mandatory injunction requiring appellant to make proper provision for the passage from his land of water impounded thereupon by appellant's roadbed. The appeal is from a judgment in appellee's favor for the sum of $250, and awarding the injunction as prayed for.

*After Stating the Case.*—The court instructed the jury as follows:

"If you find for the plaintiff the amount of your verdict will be the reasonable rental value of said land for a time including a period extending from two years next before the filing of the petition, which was filed June 28, 1907, to the present time, and you may also consider as an element of his damages the decrease in the value of said land, if any, occasioned by the deposit of sand on the same, and if you find that said deposit, if any was made, was caused by the act of defendant in filling said trestle and placing the said drain box or wooden culvert as above explained to you. But in this connection you will only consider such damages and injury as was caused by deposits of sand made two years next before the 3d day of March, 1908." The instruction is attacked by appellant as erroneous on the ground that it did not correctly state the true measure of damages and on the further ground that it authorized the jury to find for both the rental and the decreased market value of the land. On the ground last mentioned the instruction, we think, was erroneous. If the substitution of the drain box for the trestle rendered the embankment a nuisance permanent in its nature, in the sense that with respect to the rights of appellant it could not be abated, and because the effect of its maintenance was to cause constant or regularly recurring injury to appellee's land, a cause of action at once arose in appellee's favor for all damages suffered or which might in the future be suffered by him as the direct consequence thereof. In such a case the measure of his damages would be the market value of his land if it was rendered valueless; and if it was merely injured, the difference in its market value immediately before and its market value immediately after it was injured, together with interest on the sum found to represent such total or decreased value from the time the right of action accrued. Against such a cause of action the statute of limitations would begin to operate in appellant's favor at the time the substitution was made. But if the substitution of the drain box for the trestle did not render the embankment a permanent nuisance, because with proper respect to appellant's rights it could be abated, or because the injury it caused to appellee's land was not constant or regularly recurring, but was suffered only occasionally and at irregular intervals, the appellee's cause of action would be for damages resulting to him from such occasional injuries, and same would accrue as they were suffered and not at the time the substitution was made. The measure of his damages in such a case might be the value of his land, if rendered valueless; its decreased value, if merely injured; or its rental value, in a proper case, together with interest from the time the cause of action arose. Against a cause of action so arising in his favor the statute of limitations would begin to operate in appellant's favor at the time the diverted or impounded waters actually produced the injury, and not at the time the insufficient drain box was substituted for the trestle. St. Louis S. W. Ry. Co. v. Long, 113 S. W., 316; Rosenthal v. Taylor, B. & H. Ry. Co., 79 Texas, 327; Denison, B. & N. O. Ry. Co. v. Barry, 98 Texas, 251; Austin & N. W. Ry. Co. v. Anderson, 79 Texas, 433; Bonner v. Wirth, 5 Texas Civ. App., 562; International & G. N. Ry. Co. v. Davis, 29 S. W., 484; Gulf, W. T. & P. Ry. Co. v. Goldman, 8 Texas

Civ. App., 259; Gramann v. Eicholtz, 36 Texas Civ. App., 309; Houston & T. C. Ry. Co. v. Lensing, 75 S. W., 826; International & G. N. Ry. Co. v. Kyle, 101 S. W., 272; Gulf, C. & S. F. Ry. Co. v. Caldwell, 102 S. W., 461; Clark v. Dyer, 81 Texas, 343; Gulf, C. & S. F. Ry. Co. v. Helsley, 62 Texas, 593; Trinity & S. Ry. Co. v. Schofield, 72 Texas, 496; Sabine & E. T. Ry. Co. v. Joachimi, 58 Texas, 460; Kansas City, Ft. S. & M. Ry. Co. v. Cook, 21 S. W., 1066; Broussard v. Ry. Co., 80 Texas, 329. It is, we think, apparent from what has been said that a recovery can not be had for the total market value of land destroyed and at the same time for its rental value; or, if injured merely, for its depreciated market value and at the same time for its rental value. The total market value recoverable in the one case, and the decreased market value recoverable in the other case, would be determined with reference to the time the wrong giving a right to same occurred. If the land should be destroyed, in the sense that it was deprived of market value, in its worthless condition it could not have a rental value. If it should be merely injured its market value would be depreciated because the injury rendered it less useful than it was before the injury was suffered—in other words, because its rental value had been lessened as an effect of the injury. In the one case a recovery of the market value would include as an element determining it the rental value; and in the other case a recovery of the depreciated market value would include as an element determining it the depreciated rental value. So, to permit a recovery of the market and rental values in the one case, and of the decreased market and rental values in the other case, would be to permit a double recovery for the same element of damages. In the respect that it authorized the jury to find such double damages, we think the portion complained of of the court's charge is erroneous. The error will necessitate a reversal of the judgment.

With reference to the other objection made to the court's charge, appellant insists that the true measure of appellee's damages was "the difference between the rental value of the land before the drain box was put in and its rental value after the drain box was put in." Appellant cites no instance where such a measure of damages has been applied in a case like this one. If the cause of action arose at the time the drain box was substituted for the trestle, it arose then because a permanent nuisance affecting the market value of the land was thereby created, and the measure of damages would be as we have indicated above. If a permanent nuisance was not so created, then the cause of action arose only when by a diversion or impounding of waters caused by the insufficiency of the drain box appellee's land was injured. If the difference in its rental value should be applied as the measure of damages in such a case, then it should be the difference in such rental value immediately before and the rental value of the land immediately after it was so injured, and not the difference in its rental value before and after the drain box was put in. It may not have been apparent or even appeared probable at the time the drain box was substituted for the trestle, that it would not be amply sufficient to properly drain the land. Indeed, if kept open

and in proper condition to perform its best service, it may have been sufficient. The injury, if any, suffered by appellee may have been due to appellant's failure to keep the box properly cleaned out and suffering it to become so filled up with weeds, trash, sand, etc., as to fail utterly to act as a passway for waters flowing towards the embankment from appellee's land. It would hardly be contended in such an event that appellee's recovery should be limited to the difference in the rental or other value of his land immediately before and immediately after the drain box was put in. It was appellant's duty not only to originally so construct its roadbed as to not divert, to the injury of appellee's land, waters from their natural course, but also after so constructing its roadbed, to keep it in such a condition as to not so divert such waters. (Clark v. Dyer, 81 Texas, 343; International & G. N. Ry. Co. v. Davis, 29 S. W., 483; Sellers v. Texas Cent. Ry. Co., 81 Texas, 458.)

The assignments of error, insofar as they present questions likely to arise on another trial and not disposed of by what we have said, relate to the sufficiency of the evidence, and will not be considered.

The judgment is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*