MISSOURI, K. & T. RY. CO. OF TEXAS v. ANDERSON. (No. 8522.)

(Court of Civil Appeals of Texas. Ft. Worth. March 3, 1917.)

1. LIMITATION OF ACTIONS ⊚⇒55(7)—CONTINUING INJURY—STATUTE APPLICABLE.

Where a railroad so constructed an embankment as to cause surface waters to overflow plaintiff's land, the two-year statute of limitations was not a complete bar to recovery for injuries accruing during the two years prior to the action, though the original building of the embankment was done more than two years before the suit was brought.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 305.]

2. LIMITATION OF ACTIONS ⊚⇒55(7)—PERMANENT NUISANCE—RAILWAY EMBANKMENT—EVIDENCE.

Evidence ·held insufficient to show that the nuisance by backing surface water on plaintiff's land, caused by the construction of the railway embankment, was of permanent character.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 305.]

3. LIMITATION OF ACTIONS ⊚⇒55(7)—RAILWAY EMBANKMENT—PERMANENT NUISANCE—WHAT CONSTITUTES.

In an owner's action for damages from the diversion of a natural stream or flow of water by an obstruction constructed by a railroad, the injury is to be regarded as permanent, where the cost of remedying it would be so great as to justify the railroad in condemning the property and taking it under the power of eminent domain, but if the injury can be remedied at a reasonable expense, it may be regarded as temporary, and the question whether the injury is permanent or temporary may be for the jury.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 305.]

4. APPEAL AND ERROR ⊚⇒934(2)—SCOPE OF REVIEW—PRESUMPTIONS.

If any finding should be imputed to the court in the absence of requested charges submitting the issues, the finding should be in support of the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3777.]

5. WATERS AND WATER COURSES ⊚⇒178(2)—FLOWAGE OF SURFACE WATERS — OBSTRUCTION—DAMAGES.

The landowner whose property was damaged by overflow of water, caused by construction of railroad embankment, could recover the difference in the market value immediately before the overflow and immediately thereafter, or could recover for rentals lost ·by reason of the condition, but could not recover both items.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 255; Damages, Cent. Dig. § 276½.]

6. WATERS AND WATER COURSES ⊚⇒179(4)—FLOWAGE OF SURFACE WATERS — OBSTRUCTION—DAMAGES.

In property owner's action for damages to land by overflow, an award for depreciation of property could not be sustained in the absence of evidence of its value immediately before and immediately after the alleged overflow.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 250, 263.]

7. WATERS AND WATER COURSES ⊚⇒178(1)—FLOWAGE OF SURFACE WATERS — OBSTRUCTION—DAMAGES.

A railroad which constructed an embankment and backed water upon plaintiff's land from one direction could not be held liable for any damages caused by reason of the fact that the land on the other sides of plaintiff's land was higher than his.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 251–254; Damages, Cent. Dig. § 276½.]

Appeal from District Court, Tarrant County; J. W. Swayne, Judge.

Action by Forrest M. Anderson against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

C. C. Huff, of Dallas, A. C. Wood, of Houston, and Thompson & Barwise, of Ft. Worth, for appellant. Baskin, Dodge, Baskin & Eastus, of Ft. Worth, for appellee.

BUCK, J. In 1905 appellee bought the property for the injury to which he sued in this case. It is located at the northeast corner of the intersection of Rosedale street, running east and west, and Arizona avenue, running north and south, in the city

---

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of Ft. Worth, being 100x100 feet in size. The right of way of appellant parallels Arizona avenue in the vicinity where this property is situated, with only Arizona avenue between it and the property in controversy. The right of way is 100 feet in width, and the tracks at this point are laid on an embankment 15 to 20 feet high. The only opening through the embankment on which the tracks of appellant are laid is that through which Rosedale street passes under the tracks. The land to the west, southwest, and north of this property is higher than the land at that point. At the time of the purchase of the property there were two houses on it, and soon thereafter appellee built three others. All were small, and were rented to negroes. Prior to 1910 appellant had only one track on its right of way, and on this embankment near appellee's property, and the tracks across Rosedale street were supported by pilings. At that time the water from the rainfall on the west side of the track, after flowing under the bridge or trestle on pilings, was conveyed, by means of a ditch adjacent to the embankment, north 150 feet, and then across Arizona avenue, and flowed in a general easterly direction towards a large lake in the eastern part of the city. Thus appellee's property was in a measure protected from overflows from the west, though there is some evidence to show that after very heavy rains some of the water was carried directly across Arizona avenue onto and across the property owned by appellee.

About 1910, in order to lay an additional track, the appellant widened the embankment, and thereby filled up the ditch, which had theretofore, largely at least, diverted the water from appellee's property, and, in addition, constructed concrete abutments at Rosedale street, to take the place of the piling, and said abutments, that is, on the north side of Rosedale street, extended somewhat south of the embankment as it had theretofore existed. Thereby the water which had theretofore in the main been carried northward by means of this ditch was caused to flow over appellee's property, and injure it as will be hereinafter shown. There was placed, apparently by appellant, on the north side of Rosedale street and near appellant's embankment, a comparatively small tiling or storm sewer running in a northeasterly direction across Arizona avenue, but said tiling proved insufficient to collect and carry off the water which came under the appellant's bridge or trestle along Rosedale street, and in case of heavy rains the water flowed past the mouth of this sewer across Arizona avenue and onto appellee's property.

On September 23, 1914, appellee filed suit against appellant, in which he alleged injury to his property by means of the construction of the enlarged embankment and the abutments aforementioned, and the filling up of the said ditch, and alleged that appellant was negligent in said respects, and had caused the water theretofore flowing under appellant's tracks at this point to be deviated and obstructed, and that by said acts the natural flow and drainage at this point was changed. He further alleged that the natural flow of the water at this point was in an easterly direction under the tracks of appellant, thence along this ditch some 200 feet, and that such natural flow did not inundate or injure his property. He alleged injury in that his houses had been washed off their underpinnings, their porches were wrecked, etc., and that they had become untenantable and uninhabitable, and for which he asked damages in the sum of $1,000. He further alleged the rental value of said houses during the period covered by his claim, to wit, from the ———— day of September, 1912, to be $35 per month, and he asked a recovery in the sum of $1,500 for rents and profits, and damages in the sum of $41 for the loss of dirt and timbers.

Appellant answered by general demurrer and general denial, by various special exceptions, by a plea of the two-year statute of limitation, and by a plea of contributory negligence.

The cause was submitted to a jury under a general charge, wherein the jury were instructed that in no event could they award appellee damages for any injury that might have been sustained to said land and improvements on account of such diversion of the natural flow of the water as might have occurred two years prior to the filing of the suit. Upon a verdict awarding plaintiff damages for injury to his property in the sum of $1,000, and for loss of rentals in the sum of $500, judgment was entered in the sum of $1,500, from which defendant appeals.

By a number of appropriate assignments appellant urges error in the trial court in submitting to the jury any instructions except a peremptory charge in favor of the defendant, on the ground that any right of recovery had by appellee for the alleged injury to his property was barred by the two-year statute of limitation. It is urged that the construction of the additional track and consequent enlargement of the embankment and the construction of the abutments supporting appellant's track across Rosedale street created a nuisance, if one at all, permanent in its character, so that with respect to the rights of the appellant it could not be abated, and that, inasmuch as the evidence shows that appellee's property was overflowed on the occasion of each successive rain thereafter, the statute began to run upon the construction of such additional improvements, including the filling up of the ditch, and, since no suit was filed within two years thereafter, appellee's right of action is barred.

Appellee's answer to the assignments presenting this question is that the railway company, in the exercise of its legal right, con-

structed the abutments and embankments on its right of way, that thereby a cause of action did not immediately arise, and that the statute of limitation did not begin to run at the time of such construction, but would only begin to run as to each overflow and the consequent injury when said overflow occurred, and then the limitation would only apply, and would be restricted, to the right of action by reason of each separate overflow and injury; . that the evidence shows, from the testimony of appellee's mother, Mrs. B. E. Anderson, that during the year 1912 the property ceased to be tenantable and ceased to be rented, and after having been so notified by the rental agents and that the tenants had moved out on account of water, she had the houses cleaned of mud and repaired and placed them in as good condition as they were before the overflow; that prior to April, 1912, she and her son, the latter being off at school during a part of the time, had very little trouble in keeping the houses rented; that at first they got $42 per month rental, but later from $35 to $38 monthly; that the date of the repairs mentioned "was about the last of 1912, along in the fall of the year"; that from the time they first bought the property until 1912 it had never overflowed; and that since the fall of that year she had not been able to rent it.

[1] The question here presented is not without extreme difficulty. It is one that has been passed upon by the courts of doubtless every state in the Union, and has been the subject of much discussion by text-writers, and yet there seems to be much confusion among the authorities as to when the statute begins to run in a case of this kind. An earnest effort on our part to reach a conclusion with which the utterances of the leading text-writers and the decisions of the courts of last resort in the states in which this question has most frequently arisen could be reconciled has proven in vain, and the result of our investigation is far from satisfactory. However, the majority of us, at least, have concluded that in the instant case the statute of limitation would not be a complete bar to a recovery of damages for loss sustained by appellee subsequent to two years prior to the filing of the suit.

In the well-known case of Houston Waterworks v. Kennedy, 70 Tex. 233, 8 S. W. 36, our Supreme Court, speaking through Chief Justice Stayton, lays down two rules, amply sustained by authority, which should be kept in mind in the determination of a question like the one involved here. These are, quoting from the syllabus:

(1) "When an act is in itself lawful as to the person who bases thereon an action for injuries subsequently accruing from and consequent upon the act, the cause of action does not accrue until the injury is sustained."
(2) "If an act is done which in itself is an invasion of the right of another, which being done, injury is the natural sequence, then limitation will run against the right to recover damages from the time the unlawful act was committed, though the injury may not have been discovered until within a period before suit less than would be sufficient to complete the bar of the statute."

In the cited case the statute was determined to be a bar to recovery, inasmuch as the court held that the act done, which was the original cause of the injury, was in itself an invasion of the right of plaintiff, and that he had at that time a right of action. There the defendant was alleged to have—

"cut away a portion of the arch aforesaid to make way through the same for defendant's water pipe, and in so doing removed the support theretofore afforded to said east corner of said building, caused thereby said building to settle in the ground away from the other portions of said building, and the walls of said building to crack and burst open in several different places, thus occasioning to plaintiff's property serious injury and damage."

This was held to be an act wrongful towards the owner of the property at the time it was committed and for which an action might have been immediately maintained. But the principles enunciated in the cited case have been relied on in other cases where it did not appear that the act of the defendant which evidently caused the damage to plaintiff was a direct invasion of the latter's right.

In Austin & N. W. Ry. Co. v. Anderson, 79 Tex. 427, 15 S. W. 484, 23 Am. St. Rep. 350, our Supreme Court, in sustaining a recovery for injury to crops growing on plaintiff's land, such injury and damage having resulted from the manner of construction of the railway company's roadbed and culverts made more than two years prior to the suit, held that where a nuisance is permanent and continuing, the damages resulting from it should all be litigated in one suit, but when it is not permanent, but depends upon accidents and contingencies so that it is of a transient character, successive actions may be brought for each injury as it occurs, and that an action for such injury would not be barred by the statute of limitations, unless the full period of the statute had run against the special injury before suit. It also held that an embankment and culvert upon the right of way, although defectively built, do not constitute a nuisance, but they may become a nuisance when they divert water from rainfall from its usual flow.

In the case of G., C. & S. F. Ry. Co. v. Helsley, 62 Tex. 593, the Supreme Court held that the plaintiff was entitled to recover both for injury to the realty itself and for loss of crops destroyed or damaged, and adopted the rule laid down in Van Pelt v. City of Davenport, 42 Iowa, 314, 20 Am. Rep. 622:

"The true measure of damage is the injury which the land and other property of the plaintiff sustains from the successive overflows when they occur"

—and reversed the trial court because it had charged that the measure of damages would be the difference between the market value of the land at and just before the building:

of the railroad and the market value of the same after the injury was done. It was further held that, where no part of the realty was taken or injured, nor any charge wrought upon it, plaintiff could recover only for the destruction of the crops growing thereon.

In Clark v. Dyer, 81 Tex. 339, 16 S. W. 1061, the court, in referring to article 4171 of the Revised Statutes, now article 6495, Vernon's Sayles' Texas, Civil Statutes, which reads:

"In no case shall any railroad company construct a roadbed without first constructing the necessary culverts or sluices, as the natural lay of the land requires, for the necessary drainage thereof"

—said:

"A necessary implication arising from this statute is that the duty is not only to construct, but to maintain, the culverts in proper condition, so that they would accomplish the purposes for which they were constructed."

This case further holds that in the case of the construction of an embankment provided with insufficient sluices and culverts the railway company is liable for each successive overflow caused thereby, and that limitation against such damages runs from the date of each overflow caused by such failure, distinguishing the cases of Waterworks v. Kennedy and Railway Co. v. Helsley, supra.

In the case of Houston v. Parr, 47 S. W. 393 (writ denied), the court says:

"Counsel for appellant contends that plaintiff's cause of action is barred because the statute of limitations was put in operation at the date of the construction of the ditch. This would be the case where the owner's property is directly invaded. * * * But * * * the ditch was constructed where the party constructing it had the right to construct it. Damages could have been recovered at the time of its construction for such depreciation to the value of the property as it then caused, and, if suit had been brought then, any subsequent recovery would have been barred as by a former adjudication. But, no suit having been brought, the plaintiff still had the right to sue for and recover all such damages as may have been caused within two years prior to the time of the institution of his suit."

In Railway Co. v. Goldman, 8 Tex. Civ. App. 257, 28 S. W. 267, writ denied, 87 Tex. 567, 29 S. W. 1062, it was held that limitation commenced to run when the deterioration in value of the farm began, citing Wood on Nuisances, 996; Angell on Limitations, § 300. The rule laid down by Wood is given, to wit:

"When the original nuisance is of a permanent character, so that the damage inflicted thereby is of a permanent character, and goes to the entire destruction of the estate affected thereby, a recovery not only may, but must, be had for the entire damage in one action, as the damage is deemed to be original; and as the entire damage accrues from the time the nuisance is created, and only one recovery can be had, the statute of limitation begins to run from the time of its erection against the owner of the estate or estates affected thereby."

In City of Houston v. Railway Co., 26 Tex. Civ. App. 228, 63 S. W. 1056, 1057, Justice Gill of the Court of Appeals for the First District, in the discussion of the Goldman Case, supra, says:

"Justice Williams makes the distinction and announces the rule that, when 'a wrongful act amounting to a nuisance of itself creates a complete and permanent injury, the statute would run from the completion of the thing creating the nuisance, but that, where the nuisance is permanent, but the injury arising therefrom is not only continuous, but constantly increasing, successive actions will lie until the nuisance is abated."

See Grossman v. Railway Co., 99 Tex. 641, 92 S. W. 836; Railway Co. v. Ashe, 158 S. W. 205; Cement Co. v. Kezer, 174 S. W. 661, writ denied in 183 S. W. xvi.

From the cases cited and many others which might be cited from the courts of this and other states, we have reached the conclusion that those assignments directed to the refusal of the court to give a peremptory instruction in behalf of defendant must be overruled. It is true that in perhaps two of the cases cited the cause of the obstruction to the natural flow of rainfall might reasonably be said not to be of so permanent a character as that here shown, and appellant urges that these cases are therefore not applicable. But in most of the cases cited the obstruction was caused by embankments, dams, etc., structures of a permanent character, and, moreover, we understand the rule to be, as stated above, that the test is not whether the obstruction was of a permanent character, but whether the injury or damage inflicted was of a permanent character, in order that the statute of limitation might be successfully pleaded in bar. In this case it would appear that the appellant had a right to construct the embankment and the abutments complained of, so long as such construction and the maintenance thereof did not cause damage to others. The injury to appellee's property did not begin until an overflow occurred from a subsequent rainfall. The evidence was that the years of 1910 and 1911 were considered drouthy years, with a subnormal rainfall; that during the four succeeding years the rainfall was as follows: 1912, 26.35 inches; 1913, 37.70; 1914, 46.64; and that during August alone of 1915 there was a rainfall of 10.33 inches, nearly 7 inches falling within two days. If plaintiff had brought his suit at the time of the construction of the embankment and abutments, it would have been practically a matter of speculation, in which no jury or court should be called on to indulge, to determine the extent of damage which would result to plaintiff by reason of the obstruction of the natural flow of the rainfall under the trestle and through the ditch, as before constructed.

[2] Moreover, from the evidence adduced we are not prepared to hold that the results from the construction of the enlarged embankment and the abutments constituted a nuisance permanent in its nature, and which could not be abated with due respect to the rights of the railway company. While it is

true that the extension southward of the obstruction caused by the construction of the abutments and the widening of the embankment and consequent filling up of the ditch which had previously been made by the railway company for the purpose of diverting the water due to rainfall off the plaintiff's property were alleged by plaintiff as the cause of the injury to his property, in connection with the placing of an insufficient storm sewer or drain, yet it does not appear that the alleged damage to plaintiff's property, and the cause or causes from which such damage resulted, could not have been abated, either by the construction of a ditch running northward and parallel with and on the east side of appellant's right of way, similar to the one theretofore existing, or by replacing the present storm sewer or drain with one large enough to carry off the natural overflow, or by both such provisions. While the improvements or construction made by appellant in the way of abutments and enlarged embankment were permanent in their nature, yet there seems to be no good reason why the nuisance or injurious effects resulting therefrom could not have been abated.

[3] In an owner's action for damages from the diversion of a natural stream or flow of water by an obstruction constructed by a railroad, the injury is to be regarded as permanent, where the cost of remedying it would be so great as to justify the railroad in condemning the property and taking it under the power of eminent domain. But if the injury can be remedied at a reasonable expense, it may be regarded as temporary, and the question whether the injury is permanent or temporary may be for the jury. M., H. & E. Railway Co. v. Graham, 147 Ky. 604, 144 S. W. 737. There are some authorities holding that the term "permanent injury," as applied to a nuisance, means that the injury will continue without change from any cause except human labor (see Harvey v. Mason City & Ft. Dodge R. Co., 129 Iowa, 465, 105 N. W. 958, 961, 3 L. R. A. [N. S.] 973, 113 Am. St. Rep. 483), but we believe the rule enunciated by the Kentucky court supra is sound in law and principle. If this be a conclusion justified by the evidence, as we think it is, much of the difficulty arising from the conflict of authorities aforementioned is removed; for even appellant admits, in effect, that if the nuisance created by the construction aforesaid was not permanent in its nature, and was subject to abatement with respect to the rights of appellant, limitation would not begin at the time of the construction of these improvements which worked as an obstruction to the natural flow of the water.

[4] This phase of the case was not presented to the jury for a finding, nor was an instruction given with reference thereto. The charge with reference to the elements of negligence alleged by plaintiff was as follows:

"Bearing in mind the foregoing definitions, if you find and believe from the evidence that the defendant railway company, in the construction of additional tracks and abutments near the plaintiff's property or as a result of such construction, filled or obstructed or caused to be filled or obstructed a drainway extending north from Rosedale street, along its right of way, which was then and for years prior thereto a water course carrying the natural drainage of surface waters, and thereby diverted the flow of said waters to, upon, and across plaintiff's property, * * * and that such diversion injured the plaintiff's said property and improvements thereon, and you further believe that such diversion, if any, was negligence, and that such negligence was the proximate cause of such injuries, if any, then you will find for the plaintiff such damages as he may have sustained," etc.

If any finding upon this phase of the case, i. e., as to the permanency or not of the conditions created by the obstruction, should be imputed to the court, in the absence of requested charges submitting the issue, then such finding, being in support of the judgment, should be held to be against the permanency of such condition, or, at least of the injury.

[5] The twenty-sixth assignment urges the excessiveness of the verdict and judgment, in that recovery was had in the sum of $1,000 for the depreciation in the value of plaintiff's property, and, in addition thereto, $500 for loss of rents. We think this assignment should be sustained. If plaintiff's cause of action was not barred for the reason heretofore given, then his right of action was as to each successive overflow causing damage occurring within two years prior to the suit. In such an action he could recover for the depreciation in the market value of his property caused by the overflow, and the true measure of damages would be the difference in the market value immediately before such overflow and immediately thereafter, or he could recover for rentals lost by reason of the overflowed condition, but he could not recover as to both such items. T. & P. Ry. Co. v. Ford, 54 Tex. Civ. App. 312, 117 S. W. 201; G., H. & S. A. Ry. Co. v. Becht, 21 S. W. 971; 40 Cyc. p. 589 (VII). For this error the judgment must be reversed.

[6] Appellee contends that, even though the judgment be excessive as to the $500 recovered for loss of rents, any error may be cured by a remittitur. But the difficulty is, as presented by the twenty-fifth assignment, that the court instructed the jury that in estimating plaintiff's damages they would be governed by the difference, if any, in the reasonable market value of the land and improvements immediately preceding the injuries complained of and their market value immediately after such injuries; that is, the market value immediately before the first injury subsequent to September 23, 1912, and the market value of the land and improvements immediately following the last injury. There was no evidence as to the market value of the premises immediately before and immediately after any alleged overflow. There-

fore there was no evidence to sustain the recovery of the $1,000; and, even though it might be said that it was the duty of appellant to submit a charge giving the true measure of damages, and that upon its failure so to do it should be held to have waived any error in the submission of this issue, yet, in the absence of any proof as to what was the difference between the value of the property immediately before and immediately after the successive alleged overflows, the recovery will fail for want of proof. At least this court would have to require a remittitur as to the $1,000.

[7] But we are not permitted to make such a disposition of the case, because in our opinion other errors are presented in the record requiring a reversal. For instance, in the sixteenth specification of error it is urged that the court erred in refusing to give appellant's special charge No. 27, as follows:

"You are instructed that, should you find a verdict in favor of the plaintiff and assess him damages, you cannot allow him damages, if any, to his property that may have been caused, if any, by water, if any, flowing thereover by reason of the land to the north, south, and east of his said property being higher than his said property, if it is higher."

Without attempting to quote testimony making this charge proper, it is sufficient to say that several witnesses testified that the lands lying east, north, and south were higher than plaintiff's property, and it was only as to the rainfall flowing off that territory lying west which was drained by the water course entering under the bridge or trestle that appellant could, in any event, be charged with damages. For any part of the injury occurring by reason of the overflow occasioned by the water from any other direction than the west, appellant should not be charged with the damage resulting therefrom.

Many other questions are raised in appellant's brief, consisting of some 175 pages, but we think we have sufficiently disposed of the case in what we have said.

Judgment reversed, and cause remanded.