[No. 3117. Feb. 6, 1928.]

SANCHEZ v. ATCHISON, T. & S. F. RY. CO.

[264 Pac. 960.]

W. C. Reid, of Albuquerque, J. M. Hervey, of Roswell, and E. C. Iden, of Albuquerque, for appellant.

E. B. Garcia, of Albuquerque, for appellee.

OPINION OF THE COURT

WATSON, J. Plaintiff sued in 1923, alleging that he was the owner of certain lands which were formerly

drained by an arroyo or natural water course having its source above said land and its outlet below it in the Rio Grande; that in 1907 defendant had built, on adjoining property, and across said arroyo or natural water course, an embankment for its roadbed, which obstructed the natural flow of water from plaintiff's land, and caused same to be submerged. It was specifically alleged in this respect that on May 25, 1921, water accumulated upon his land to a depth of 36 inches, destroying an adobe house and corral, and that the water had destroyed "the former cultivatable value," so that he had not been able to produce garden truck and farm products as before. Damages were laid for the loss of the adobe house and corral, and for loss of crops during each of the years 1920 to 1923, inclusive. It was also prayed that defendant be required to furnish an outlet through its embankment to prevent future overflow.

The court found that all material allegations of the complaint as to the damages in the year 1921 had been proven, and awarded $900 for the destruction of the house and corral and $75 for loss of crops. No findings were made nor damages allowed for the years 1920, 1922, or 1923, and no action was taken upon the prayer for abatement of the nuisance. At defendant's request, the court especially found "that such railroad embankment was built during the years 1906 and 1907; was a permanent embankment; and, since the date of construction, has been maintained in substantially the same condition as when built." Defendant has appealed.

The first proposition urged is that the suit was barred by limitation. It is contended that the cause of action is the construction of the embankment; that, if it caused any injury to plaintiff's land, it was a permanent injury, for which the damages properly allowable would be measured by the lessened value of the land; that these damages accrued in 1907, when the embankment was built, and could only be recovered by suit instituted within the statutory period thereafter. It cites Board of Directors v. Barton, 92 Ark. 406, 123 S. W. 382, 25 L. R. A. (N. S.) 645, 135 Am. St. Rep. 191. It is urged that that case

is in point; that the theory of the decision is sound; and that it is supported by weight of authority.

The cases upon this question will be found collected in the L. R. A. case note to Board of Directors v. Barton, just cited, and in the earlier note to Gulf, C. & S. F. R. Co. v. Mosley (C. C. A.) 161 F. 72, 20 L. R. A. (N. S.) 885. They exhibit a confusion of decision and theory. The author of the cited case note in 25 L. R. A. (N. S.) 645, says:

"It would be difficult to conceive of any subject of law about which there is a greater apparent conflict of judicial opinion."

It is not our purpose to classify, nor to attempt to harmonize, the decisions, nor to lay down any general rule for this jurisdiction. The present case does not call for it. It may well be admitted that in certain situations one damaged by the erection of a permanent structure should be deemed to have suffered his damages when the structure was erected, and should be required to sue for them within the period of limitation, and to have them adjudicated in a single action. It is not impossible that under different pleadings and findings such a situation might have developed in the present case. The question is here to be decided, however, upon the pleadings and findings as above set forth. Having invoked the statute of limitations in its answer, it was for appellant to obtain, or propose, findings which would bring it within the protection of the statute.

We have found no case more strongly upholding appellant's contention than Board of Directors v. Barton, supra, upon which it relies. Even that case professes adherence to the general rule laid down in St. Louis, I. M. & S. R. Co. v. Biggs, 52 Ark. 240, 12 S. W. 331, 6 L. R. A. 804, 20 Am. St. Rep. 174 in this language:

"Whenever the nuisance is of a permanent character and its construction and continuance are necessarily an injury, the damage is original, and may be, at once, fully compensated. In such case the statute of limitations begins to run upon the construction of the nuisance. * * * But when such structure is permanent in its character, and its construction and continuance are not necessarily injurious, but may or may not be so, the injury to be compensated in a suit is only the damage which has happened; and there may be

as many successive recoveries as there are successive injuries. In such case the statute of limitations begins to run from the happening of the injury complained of."

The test is thus stated to be whether the permanent structure is "necessarily" injurious. Other statements of the rule give the same test. 20 R. C. L. p. 467; Gould on Water Rights, § 467. It is sometimes inquired whether the injury was constant or regularly recurring. T. & P. R. Co. v. Ford, 54 Tex. Civ. App. 312, 117 S. W. 201; Pickens v. Coal River Boom & Timber Co., 66 W. Va. 10, 65 S. E. 865, 24 L. R. A. (N. S.) 354. As we gather, the real purpose in applying these tests is to determine whether the injury was apparent from the beginning and the damages reasonably capable of estimation. If so, as held in some jurisdictions at least, the owner of the land must take notice of the invasion of his rights, and claim, within the statutory time thereafter, his whole damages, in the lessened value of the property. This is well stated in Howard County v. C. & A. R. Co., 130 Mo. 652, 32 S. W. 651, thus:

"While there is some conflict between the American cases on this subject, the rule sustained by the great weight of authority seems to be that when by wrongful acts a permanent nuisance is created and the injury therefrom is direct, immediate and complete, so that the damages can be immediately measured in a single action, the statute will begin to run from the erection of the nuisance. On the other hand, when the injury, as in this case, is not complete so that the damages can be measured at the time of the creation of the nuisance in one action but depends upon its continuance and the uncertain operation of the seasons, or of the forces set in motion by it, the statute will not begin to run until actual damage has resulted therefrom."

In the case at bar appellant has contented itself with the finding that the structure complained of is permanent. It sought no finding that it was necessarily, constantly, or periodically injurious, or that the injurious consequences were direct, immediate, or complete. Indeed, it contends that the evidence shows that the overflow occurring in 1921 is the first damage appellee's land had ever suffered. This does not seem to be sufficient to meet any of the tests.

In Board of Directors v. Barton, supra, the decision principally relied upon, the court held, as matter of law,

that a permanent levee across streams and bayous, and completely stopping drainage through them, *necessarily* caused injury to all lands formerly drained by them, and constituted permanent injury, for which the damages were original, and should have been sought in one action, commenced within the period of limitation. It is thus clearly distinguishable from the case at bar.

Appellant's next contention is that:

"Waters backing upon appellee and doing damage complained of were 'surface waters,' and were not confined or flowing in any natural water course."

Counsel thus questions the correctness of the court's findings. To demonstrate that this proposition, as an appellate court must view it, is without merit, it is necessary only to quote from appellant's brief. It says:

"The appellant recognizes the rule so often announced by this court that, if findings are supported by 'substantial evidence,' they will not be disturbed. Whether certain findings are supported by substantial evidence or not must certainly be decided with all the testimony in the case before the court. The testimony adduced in behalf of plaintiff was, we think, entirely from the recollection of 'old timers' in that vicinity, who had lived there and who had known the Los Lecos Settlement for several years, and who indefinitely and with great uncertainty testified that the water used to run to the south from the Los Lecos Settlement towards Belen across a point where the railroad embankment is now built, and it must be conceded that such testimony, without considering the testimony of experts and engineers, must constitute 'substantial evidence' upon which the court could make findings that the railroad embankment did obstruct a natural water course."

Again it admits:

"* * * Appellee is in the position of having to submit to this court for decision the question of whether or not the findings of the lower court, based upon the uncertain and indefinite testimony of aged witnesses, is supported by 'substantial evidence' as compared with the certain, direct, and accurate evidence of the reputable engineers who have testified in this case."

Counsel thus ask us to overthrow findings of the trial court based upon substantial evidence making a prima facie case by weighing it against the evidence to the contrary. They also ask us to lay down a proposition of law that evidence that water did flow in a certain course and direction is valueless as against evidence by topographical engineers that it could not have done so. To weigh the

evidence is not our proper function, and we think no precedent can be found for such a proposition of law.

Unable to sustain either of appellant's contentions of error, we must affirm the judgment and remand the cause.

It is so ordered.

PARKER, C. J., and BICKLEY, J., concur.