CONSOLIDATED CHEMICAL INDUSTRIES, INC. *v.* WHITE.

5-1122                                              297 S. W. 2d 101

Opinion delivered January 7, 1957.

*Wright, Harrison, Lindsey & Upton,* for appellant.

*Fred A. Newth, Jr.,* and *Kenneth C. Coffelt,* for appellee.

MINOR W. MILLWEE, Associate Justice. Appellant, Consolidated Chemical Industries, Inc., owns a 10-acre tract of land in Pulaski County which lies immediately south of 8.5 acres belonging to appellees, E. H. White and Jesse A. White. E. H. White purchased the 8.5 acres in 1945 and subsequently sold two acres to his

brother and each built homes on their respective tracts. In 1951 appellant commenced strip mining operations for bauxite on its land and the first dirt removed was spread over the 10-acre tract. Later appellant built a high ramp or dump out of the dirt, lignite and other waste material from its mining operations along the north edge of its tract adjacent to appellees' lands.

On July 29, 1955, appellees filed the instant action against appellant to recover damages to their lands which allegedly occurred within three years next before the filing of the complaint by reason of the maintenance of a nuisance in the construction of the ramp or stock-pile of waste materials which caused the washing of appellees' lands and the deposit of said waste materials upon and across said lands. Appellant's answer was a general denial and a plea that the action was barred by the three-year statute of limitations (Ark. Stats., Sec. 37-206). This appeal is from a verdict and judgment for E. H. White in the sum of $650 and for Jesse A. White in the sum of $275.

Appellant first argues that the undisputed evidence established that the damage to appellees' lands was completed in the spring of 1952 and that their claims were consequently barred by the statute of limitations. The applicable rule which is based upon a distinction between structures which are and those which are not "necessarily injurious" is stated in the leading case of *St. Louis I. M. & S. R. Co.* v. *Biggs,* 52 Ark. 240, 12 S. W. 331, 6 L. R. A. 804, 20 Am. St. Rep. 174, as follows: "Whenever the nuisance is of a permanent character and its construction and continuance are *necessarily* an injury, the damage is original, and may be, at once, fully compensated. In such case the statute of limitations begins to run upon the construction of the nuisance. *Ry.* v. *Morris,* 35 Ark. 622; *Ry.* v. *Chapman,* 39 Ark. 463. But when such structure is permanent in its character, and its construction and continuance are *not necessarily* injurious, but may or may not be so, the injury to be compensated in a suit is only the damage which has happened; and there may be as many successive recov-

eries as there are successive injuries. In such case the statute of limitations begins to run from the happening of the injury complained of." See also, *Chicago, R. I. & P. Ry. Co.* v. *Humphreys,* 107 Ark. 330, 155 S. W. 127, and *Daniels* v. *Batesville,* 189 Ark. 1127, 76 S. W. 2d 309, and cases there cited.

It is clear that the instant case falls within the second class mentioned above and that the statute begins to run from the happening of the injury complained of. On this issue appellees testified that the ramp and stockpile of waste materials were still under construction in August 1952 and that rains subsequent thereto washed their lands and otherwise damaged them by leaving heavy deposits of the waste material as far as 75 feet upon their lands, killing their trees and destroying the fertility of the whole tract. While Jesse A. White noticed some washing by the "winter rains" in 1952, each of the appellees stated that most of the damage occurred in 1953 and subsequently. While the testimony of appellees was disputed to some extent by that offered by appellant, it was substantial and sufficient to support the jury's finding that the damages occurred within three years next before the filing of the complaint on July 29, 1955. On the whole case the evidence was sufficient to sustain the verdict and the trial court did not err in refusing to direct a verdict for the appellant.

We also find no merit in appellant's contention that the verdict was excessive. A real estate agent familiar with the lands in question testified on direct examination that appellees' lands would be worth $11,000 except for the damages occasioned by appellant's construction and maintenance of the ramp which had reduced the value of the lands 40 per cent. While this estimate was rendered somewhat indefinite on cross-examination, the witness still concluded that the lands sustained a 25 percent reduction in value on account of the construction and maintenance of the ramp and his testimony was not contradicted by that of any other witness.

Affirmed.

CARLETON HARRIS, C. J., not participating.