755 P.2d 80

**Anselmo VALDEZ, Plaintiff–Appellee,**

v.

**MOUNTAIN BELL TELEPHONE CO., Public Service Co. of New Mexico, and City of Las Vegas, New Mexico, Defendants–Appellants.**

**Nos. 9789, 9793.**

Court of Appeals of New Mexico.

April 28, 1988.

Donaldo A. Martinez, Las Vegas, for plaintiff-appellee.

Robert C. Conklin, Keleher & McLeod, P.A., Albuquerque, for defendant-appellant Public Service Co. of N.M.

Helen L. Stirling, Montgomery & Andrews, P.A., Albuquerque, for defendant-appellant City of Las Vegas.

**OPINION**

GARCIA, Judge.

Defendants, Public Service Company of New Mexico (PNM) and City of Las Vegas (City) took an interlocutory appeal from an order denying their motions for summary judgment and joint motion for reconsideration. We affirm.

FACTS

Plaintiff homeowner's original complaint alleged that Mountain Bell of New Mexico and PNM were franchised by City to provide service to residents of City, and that with City's knowledge and consent, Mountain Bell and PNM negligently maintained a utility pole at the outlet of a drainage ditch near plaintiff's property. Plaintiff alleged that the utility pole blocked the drainage ditch preventing the run-off of rainwater and snowmelt, thereby causing the water to stand and seep into the ground, ultimately causing damage to plaintiff's home. The complaint sought injunctive relief together with both compensation and punitive damages. Mountain Bell moved for and was granted summary judgment. It is not a party to this appeal. The trial court further dismissed the claims against City determining that plaintiff could only sue in accordance with provisions under the Tort Claims Act, NMSA 1978, Section 41–4–1 to –27 (Repl.Pamp. 1986). Subsequently, plaintiff was allowed to amend his complaint reiterating his claim against PNM but asserting only an inverse condemnation claim against City.

Both PNM and City filed motions for summary judgment claiming that plaintiff's cause of action was barred by the applicable statute of limitations. In support of their motions, PNM and City relied upon affidavits, portions of plaintiff's deposition, and other information. The unchallenged facts are as follows. Plaintiff purchased his home in April 1970. A concrete drainage ditch, with eight inch high sides, is presently located along the south property line, and was there when plaintiff bought the property. A utility pole, installed in 1942, is located about one foot from the opening of the drainage ditch on plaintiff's

property. The utility pole has been maintained on an easement pursuant to a franchise agreement between PNM and City which allows PNM to use public streets and ways.

Since as early as 1972 or 1973, plaintiff was aware that the land on the south side of his home was constantly damp. Subsequently, in 1979 or 1980, plaintiff noticed cracks in the south wall, through which he could see daylight. In 1980, plaintiff unsuccessfully attempted to caulk the cracks. That same year, plaintiff filed an insurance claim under his homeowner's policy. At that time, plaintiff was informed that the damage to his home was not covered under the policy because the damage was due to water seepage. Thereafter, plaintiff hired professionals to repair the cracks.

Plaintiff filed affidavits in opposition to the summary judgment motions and filed a portion of his deposition. These documents indicated that during the years 1982–1985, the cracks in the south wall of the house returned, increased in size and length, and extended around the corners of the south wall; that at least one cinder block had fallen out of the south wall; and that the south side of the house was sinking. The documents also indicated that the flow of water through the drainage ditch increased after certain street construction activities by the City and Mountain Bell, and that the damage to plaintiff's property increased after heavy rainfalls and snows in 1982–1984. Plaintiff also claimed that the drainage ditch was clogged up.

Accordingly, it is undisputed that plaintiff observed repeated dampness on the south side of his property as early as 1971 or 1972. It is further undisputed that plaintiff knew his house had suffered damage as a result of water seepage as early as 1979 or 1980.

### ISSUE ON APPEAL

On interlocutory appeal, defendant argues that although plaintiff's property may be suffering from recurring injuries, his cause of action is time-barred. Accordingly, we must determine whether the applicable statutes of limitations, specifically NMSA 1978, Section 37–1–4 and NMSA

1978, Section 42A–1–31(B) (Repl.Pamp. 1981), allow a cause of action to accrue with every new injury or whether plaintiff's complaint is barred. The limitations issue is one of first impression.

We note that while City's brief-in-chief addresses only this issue, PNM's brief-in-chief and plaintiff's answer brief raise other grounds for resolving this appeal. Most of PNM's additional grounds were included in its memorandum brief in support of its motion for summary judgment. None of these additional grounds, however, were presented to the trial court; nor were they included in PNM's motion for summary judgment or in its application for interlocutory appeal. Thus, we will not consider them.

### SUMMARY JUDGMENT

 Summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Westgate Families v. County Clerk of Los Alamos*, 100 N.M. 146, 667 P.2d 453 (1983); *see* SCRA 1986, 1–056; *Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972). Summary judgment, however, is a drastic remedy which should only be used with great caution. *Cunningham v. Gross*, 102 N.M. 723, 699 P.2d 1075 (1985). Accordingly, a reviewing court looks to the whole record and views matters in the light most favorable to support a trial on the merits. *North v. Public Serv. Co. of N.M.*, 97 N.M. 406, 640 P.2d 512 (Ct.App.1982). When the facts are undisputed, however, as here, the question of whether a statute of limitations bars a complaint is one of law. *See Garza v. W.A. Jourdan, Inc.*, 91 N.M. 268, 572 P.2d 1276 (Ct.App.1977).

 In support of its argument that the present suit is barred by the statute of limitations, PNM relies on *Mayer v. Lane*, 33 N.M. 18, 262 P. 178 (1927) and *Sanchez v. Atchison, T. & S.F. Ry.*, 33 N.M. 240, 264 P. 960 (1928). Both *Mayer* and *Sanchez*, however, are distinguishable.

In *Mayer*, plaintiff's mine caved in and, after the applicable four-year statute of limitations ran, plaintiff sued his co-tenants

alleging that the cave-in and resulting damage were due to their negligence. In answer, the co-tenants moved to dismiss arguing the suit was barred since the cause of action accrued when plaintiff first discovered the cave-in. Plaintiff maintained, however, that he did not realize the full extent of the property damage until months after the cave-in and, thus, his complaint was timely filed from that later point. The trial court dismissed and the supreme court affirmed, holding that plaintiff could have ascertained the full extent of the injury shortly after the cave-in and the statute of limitations accrued at that time. *Mayer*, much like the case at bar, concerns the accrual of the statute of limitations for injury to land. *Mayer*, however, involved but a single injury while plaintiff here alleges that his property is suffering from recurring injuries. Thus, *Mayer* is inapplicable.

Similarly, PNM's reliance on *Sanchez* is misplaced. In *Sanchez*, defendant built an embankment on his property in 1907 which obstructed the natural water flow from plaintiff's adjoining land causing plaintiff's property to become submerged in 1921. Plaintiff brought suit in 1923. Defendant argued that plaintiff's cause of action accrued at the time the embankment was constructed and, thus, plaintiff's suit was barred by the statute of limitations. The supreme court disagreed holding that:

> "when the injury * * * is not complete so that the damages can be measured at the time of the creation of the nuisance in one action but depends upon its continuance and the uncertain operation of the seasons, or of the forces set in motion by it, the statute will not begin to run until actual damage has resulted therefrom."

*Id.* at 243, 264 P. at 961 (quoting *Howard County v. Chicago & A.R. Co.*, 130 Mo. 652, 32 S.W. 651 (1895)). *Sanchez* supports plaintiff's position that the statute of limitations, here, accrues not when the nuisance is constructed but, rather, when the nuisance has caused actual harm to plaintiff's property. *Sanchez* does not address the present issue of recurring injury, however, and thus is of no help to PNM.

In further support, PNM asserts that actions for medical malpractice, personal injury, and negligence in drafting and supervising the execution of a will accrue from the time of the injury or the discovery thereof and, thus, the same rule should apply here. *See Crumpton v. Humana, Inc.*, 99 N.M. 562, 661 P.2d 54 (1983); *Jaramillo v. Hood*, 93 N.M. 433, 601 P.2d 66 (1979); *New Mexico Elec. Serv. Co. v. Montanez*, 89 N.M. 278, 551 P.2d 634 (1976); *Peralta v. Martinez*, 90 N.M. 391, 564 P.2d 194 (Ct.App.1977). As in *Sanchez*, however, none of these cases concern recurring injuries and, thus, are inapplicable.

Some courts have held that where the injury from a recurring overflow of water becomes permanent, the statute of limitations accrues, for further injuries, at the point the injury becomes permanent. *See* Annot., *When Statute of Limitation Commences to Run Against Damage From Overflow of Land Caused by Artificial Construction or Obstruction*, 5 A.L.R.2d 302, 372 (1949). The general rule, however, is that where a structure or nuisance is such that its construction and continuance are not necessarily injurious, damages may be awarded for successive injuries, and a new statute of limitations begins to run from the date of each injury. *See* 54 C.J.S. *Limitation of Actions* § 178 (1987); *see also* Annot. 5 A.L.R.2d, *supra* at 378 (cases holding that the limitation period in overflow cases run from each overflow).

Courts have also distinguished between a permanent or temporary structure or nuisance. *See* 54 C.J.S., *supra*. A permanent structure or nuisance is one that may not be readily remedied, removed or abated at a reasonable expense, or one of a durable character evidently intended to last indefinitely, costing as much to alter as to build. *See Id.*

In *Sanchez*, the court recognized *St. Louis, I.M. & S. Ry. v. Biggs*, 52 Ark. 540, 12 S.W. 331 (1889), as one of the seminal cases on recurring injuries. In *Biggs*, plaintiff sued defendant railroad for damages resulting from the overflow of water onto plaintiff's land due to the defective construction of the railroad. Defendant

claimed that the cause of action should have accrued from the date of the railroad's construction. The court disagreed:

> Whenever the nuisance is of permanent character, and its construction and continuance are necessarily an injury, the damage is original, and may be at once fully compensated. In such case the statute of limitations begins to run upon the construction of the nuisance. But when such structure is permanent in its character, and its construction and continuance are not necessarily injurious, but may or may not be so, the injury to be compensated in a suit is only the damage which has happened, and there may be as many successive recoveries as there are successive injuries. In such case the statute of limitations begins to run from the happening of the injury complained of.

*Id.* at 540, 12 S.W. at 331 (citations omitted).

We view the rule in *Biggs* to be applicable here. *See Consolidated Chem. Indus., Inc. v. White,* 227 Ark. 177, 297 S.W.2d 101 (1957); *City of Tucson v. Apache Motors, et al.,* 74 Ariz. 98, 245 P.2d 255 (1952); *Phillips v. City of Pasadena,* 27 Cal.2d 104, 162 P.2d 625 (1945).

██ Plaintiff alleges that the utility pole here is a permanent structure which is not per se injurious, but becomes so with excessive rain or snow. As such, the nuisance is temporary. *See* 54 C.J.S., *supra.* We believe the utility pole here could probably be easily removed at a reasonable expense, and is, therefore, a temporary structure. In either case, successive actions may be brought because each new injury allows a new cause of action to accrue. *See id.* In line with these cases, the appropriate rule is that successive recoveries should be allowed following each injury, where the improvement is negligently constructed and the damage to plaintiff's property could not be reasonably calculated at the time of the completion of the construction thereof.

PNM has cited several cases in support of a different result. *See, e.g., Greene v. Green Acres Constr. Co.,* 36 Colo.App. 439, 543 P.2d 108 (1975); *Denora v. Fischer*

*Eng'g & Maintenance Co.,* 55 Or.App. 448, 638 P.2d 490 (1982); *Leggieri v. Township of Haverford,* 98 Pa.Commw. 646, 511 A.2d 955 (1986). These cases, however, are distinguishable since the nuisance, here, is abatable; the injuries are recurring; the extent of the damages were not necessarily ascertainable when plaintiff purchased the property; and the nuisance is not necessarily injurious. *See Sanchez v. Atchison, T & S.F. Ry.; Consolidated Chem. Indus., Inc. v. White; City of Tucson v. Apache Motors; Phillips v. City of Pasadena.*

Based on these authorities and the facts alleged, we hold that Section 37–1–4 allows a separate cause of action to accrue with each new injury to plaintiff's property. Accordingly, the trial court correctly denied PNM's summary judgment motion.

ACCRUAL OF SECTION 42A–1–31(B)

In inverse condemnation cases, courts have used traditional common-law rules with regard to when the cause of action accrues. *See Bellman v. County of Contra Costa,* 54 Cal.2d 363, 5 Cal.Rptr. 692, 353 P.2d 300 (1960); *Amador Valley Investors v. City of Livermore,* 43 Cal.App.3d 483, 117 Cal.Rptr. 749 (1974); *Beer v. Minnesota Power & Light Co.,* 400 N.W.2d 732 (Minn.1987). In *Bellman,* plaintiff's hillside tract of land bordered upon a county road which the county widened by excavating into the hillside near plaintiff's property, thereby removing the lateral and subjacent support for plaintiff's land. Thereafter, substantial quantities of earth from plaintiff's property slid onto the widened road, and further slippage continued through the time of trial. In determining when the statute of limitations accrued, the court adopted the traditional rule that, for the accrual of plaintiff's inverse condemnation action, a new and separate cause of action arises with each new subsidence.

In arguing against plaintiff's theory of accrual, City, like PNM, relies on *Mayer v. Lane* and *Sanchez v. Atchison, T. & S.F. Ry.* We have determined, however, that just as neither case applied to PNM's argument, they are likewise inapplicable here. We further find City's reliance on cases from other jurisdictions to be unpersuasive;

they are distinguishable on their facts from the instant case. *See, e.g., Whitehouse v. Town of Sherborn*, 11 Mass.App. 668, 419 N.E.2d 293 (1981); *Hart v. City of Detroit*, 416 Mich. 488, 331 N.W.2d 438 (1982); *Prendergast v. Northern Va. Regional Park Auth.*, 227 Va. 190, 313 S.E.2d 399 (1984). Moreover, City's reliance upon several non-inverse condemnation cases are also distinguishable from the instant case and, thus, likewise, unpersuasive. Accordingly, the trial court properly denied City's summary judgment motion.

CONCLUSION

We affirm the trial court's denial of both motions for summary judgment.

IT IS SO ORDERED.

ALARID and FRUMAN, JJ., concur.