DICKINSON v. NORMAN.

Opinion delivered June 30, 1924.

1. QUIETING TITLE—LACHES OF PLAINTIFF'S GRANTOR.—In an action to remove clouds upon title, plaintiff was estopped by the laches of his grantor, who waited six years and eight months before she probated a will in which the lands were devised to her, where in the meantime a person holding alleged forged deeds from the testator had recorded them and had sold the lands to innocent purchasers who paid valuable considerations and made valuable improvements.

2. EQUITY—DOCTRINE OF LACHES.—While ordinarily the doctrine of laches will not be applied in cases of delay short of the period of limitation, courts of equity will not hesitate to apply the rule where supervening equities call for its application.

Appeal from Union Chancery Court, First Division; J. Y. Stevens, Chancellor; affirmed.

*Mahony, Yocum & Saye* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

The finding of the chancellor was against the clear preponderance of the evidence. It is admissible to show that a grantor in a deed or mortgage never actually appeared before the officer purporting to have taken his acknowledgment, and that the grantor made no acknowledgment at all. 130 Ark. 413. When it is sought to show that the grantor did not acknowledge the deed at all, no rule as to the amount of evidence required obtains, but the court is to determine from all the circumstances disclosed whether the certificate is true or false. 103 Ark. 488; 130 Ark. 318; 116 Ark. 142; 117 Ark. 326. Where the evidence is so clear as to produce a moral certainty that the certificate is false, it will be held invalid. 1 C. J. 901. One purchasing land from a person who obtained title thereto by forgery is not a *bona fide* purchaser. 37 Ark. 195. Where a grantor has no title, the doctrine of *bona fide* purchaser does not apply. 217 Fed. 11; 222 Fed. 760. If a deed is void, a subsequent innocent purchaser is not protected. 52 So. 425.

*Pat McNalley,* for appellee.

Acts and declarations of a person in possession of a tract of land are admissible to show the character and extent of possession but not to contradict the title. 132 Ark. 227; 96 Ark. 589; 90 Ark. 149; 45 Ark. 472; 48 Ark. 169. The appellant was barred by his laches. "He who seeks equity must do equity." 137 Ark. 600. Laches is not mere delay, but delay that works disadvantage to another. 5 Pomeroy Eq. Jur. (3 ed.), § 21; 114 Ark. 359; 103 Ark. 251; 81 Ark. 296; 101 Ark. 230; 16 Cyc. 162; 55 Ark. 85; 135 Ark. 206. The findings and decree of a chancellor are persuasive and will not be set aside on appeal, unless clearly against the weight of the evidence. 136 Ark. 624; 129 Ark. 197.

HUMPHREYS, J. Appellant brought this suit in the chancery court of Union County on May 14, 1921, against John C. Norman, W. A. Tuberville, Lee Davis, A. G. Shivers, S. J. Garner, and James Coleman, to cancel two

deeds from Maria F. Norman to her husband, John C. Norman, one being dated February 12, 1912, and the other December 19, 1913, conveying certain lands in said county, and also to cancel certain deeds from John C. Norman to each of the other appellees for certain parts of the lands described in the two deeds. It was sought to cancel and remove all of said deeds as clouds on appellant's alleged title to said lands, upon the ground that the first two deeds were forgeries, and therefore passed no title to the lands to John C. Norman's co-appellees. Appellant alleged that he was the owner of said lands under a deed of gift from Fannie R. Norman, to whom they were devised by Maria F. Norman.

Appellees filed answers to the bill, denying that the deeds dated Feb. 10, 1912, and December 19, 1913, were forged instruments, and interposing the further defense of limitations and laches.

The cause was submitted to the court upon the pleadings and testimony, which resulted in a decree dismissing appellant's bill for the want of equity, from which is this appeal.

The record reveals that, many years before the execution of the first two deeds, John C. Norman had conveyed all his lands to his wife, Maria F. Norman, in an effort to save them from his creditors. John C. Norman testified that, after recovering from his financial distress, his wife voluntarily conveyed his lands back to him. All the lands involved in this litigation were embraced in the first two deeds, which were placed on record by John C. Norman a short time after their purported execution, and before the death of Maria F. Norman, which occurred on September 18, 1914. Either before or immediately after the death of Maria F. Norman, John C. Norman took actual possession of the lands in question, and paid the taxes on them until he sold them to his co-appellees. The dates of his conveyances of certain parts of the lands to his co-appellees are as follows: to S. J. Garner, January, 1915; to James Coleman, January 16, 1915; to A. G. Shivers, July 17, 1915; to W. A. Tuberville, January 2,

1917; and to Lee and J. W. Davis, February 19, 1919. The respective purchasers aforesaid of the various parcels of the land entered immediately into the actual possession of the parcel he purchased, paid the taxes, and made valuable improvements thereon. After John C. Norman conveyed the lands he became insolvent, and was in that condition when this suit was instituted and tried.

On January 19, 1913, Maria F. Norman executed a will, in due form, by the terms of which she devised all her property wherever situated to Fannie R. Norman. The will was admitted to probate in Union County, Arkansas, February 15, 1921. On May 6, 1921, Fannie R. Norman conveyed to appellant all of the property which had been bequeathed to her by Maria F. Norman, who immediately instituted this suit.

Appellant introduced testimony tending to show that the deeds of date February 10, 1912, and December 19, 1913, conveying the lands in question, were forged by John C. Norman.

Appellees introduced testimony tending to show otherwise.

We deem it unnecessary to set out and analyze this testimony, for a majority of the court have reached the conclusion that appellant is estopped from recovering these lands by the laches of his grantor, Fannie R. Norman. She waited for six years and eight months after the death of her testator before she probated the will in which the lands were devised to her. In the meantime John C. Norman, who had recorded the purported deeds from his wife in her lifetime, was permitted to occupy, pay taxes on, and sell the lands to his co-appellees for a valuable consideration, who, in turn, were permitted to pay the taxes and make valuable improvements upon the respective parcels owned by each. At the time of the institution of this suit John C. Norman was judgment proof, and none of the purchasers could have recovered the purchase money they paid him for the land. Ordinarily the doctrine of laches will not be applied in a case short of the period of limitations fixed by the

statute, but courts of chancery will not hesitate to apply the rule where supervening equities call for its application, as the particular circumstances in this case do. In the case of *Tatum* v. *Arkansas Lumber Co.*, 103 Ark. 251, this court quoted with approval the following statement from Mr. Pomeroy relative to the true doctrine of laches:

"Laches, in legal significance, is not mere delay, but delay that works disadvantage to another. So long as parties are in the same condition, it matters little whether he presses a right promptly or slowly within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right. The disadvantage may come from the loss of evidence, change of title, intervention of equities, and other causes; but when a court sees negligence on one side, and injury therefrom on the other, it is a ground for denial of relief."

It again quoted and approved the doctrine in the case of *Casey* v. *Trout,* 114 Ark. 359, taking occasion to say that the doctrine quoted from Mr. Pomeroy had been defined in substantially the same language in the case of *Earle Improvement Co.* v. *Chatfield,* 81 Ark. 296. It is true that this court said in the case of *Bird* v. *Jones,* 37 Ark. 195, that one purchasing land from a person who obtained title thereto by forgery is not a *bona fide* purchaser, but the doctrine of innocent purchaser does not control the instant case. The doctrine of laches rules it. The appellant is estopped to recover the lands, because his grantor delayed in asserting her title until it would have worked disadvantage and injury to the co-appellees of John C. Norman if permitted to do so. The equities of the co-appellees of John C. Norman supervene any right appellant now has.

No error appearing, the judgment is affirmed.

DISSENTING OPINION.

HART, J.   It is well settled in this State, as well as elsewhere, that mere delay or lapse of time, however short of the statutory period, is not of itself sufficient to constitute laches unless such delay has so prejudiced the other party, by loss of testimony or changed relations, that it would be unjust to permit him to exercise his right. If it appears that lapse of time has not, in fact, changed the conditions and relative positions of the parties, and that they are not materially impaired, and there are peculiar circumstances entitled to consideration as excusing the delay, the court will not deny the appropriate relief.   *Tatum* v. *Arkansas Lumber Co.,* 103 Ark. 251; *Reeves* v. *Davidson,* 129 Ark. 88; and *Rowland* v. *Taylor,* 134 Ark. 183.

It does not appear from the record that any witness has died since plaintiff's cause of action accrued; nor has the transaction under consideration become obscure by lapse of time.   So far as this record shows, it does not appear that any valuable or material improvements have been made upon the property in question.   The rise in value of the lands is a purely accidental one, unconnected with any fault of the plaintiff or merit of the defendants. The plaintiff in this case has been guilty of no conduct and made no representations whatever that would induce the defendants to purchase the lands in question. He has done nothing but delay asserting his rights in the premises.   On account of his relationship to John C. Norman and the latter's necessities arising from old age and poverty, he permitted him to hold possession of the lands in question.   His occupancy was permissive and did not give him any right to dispose of the lands.   As we have just seen, the defendants were not induced to purchase the lands by any representations or conduct on the part of the plaintiff.   Nothing has occurred since the purchase upon which they might predicate a defense to the recovery of the lands by reason of estoppel or of laches on the part of the plaintiff.

It does not seem to me that the insolvency of Norman and the date of the decree cuts any figure at all. He was insolvent throughout the whole period of time involved in these transactions. If the deeds were forgeries, they gave him no title whatever. If they were not forged, Norman had the title to the lands, and the question of laches would not arise.

Having reached this conclusion, it becomes necessary for me to express my views on the question of whether the deeds under which the defendants deraign title are forgeries. I think the proof shows that the deeds were forgeries within the rule announced in *Miles* v. *Jerry,* 158 Ark. 314, and cases cited.

It follows that I respectfully dissent from the majority opinion.