Imogene Gaines MOORE et al *v.*
CITY OF BLYTHEVILLE

CA 80-437                               612 S.W. 2d 327

Court of Appeals of Arkansas
Opinion delivered March 11, 1981

*Oscar Fendler* and *Bill W. Bristow*, for appellants.

*Max Harrison; Percy Wright;* and *Reid, Burge & Prevallet,* by: *Robert L. Coleman,* for appellee.

TOM GLAZE, Judge. This case involves four appellants who appeal from a Chancery Court decree which compelled the appellee, the City of Blytheville, to take certain corrective action to abate a nuisance caused by its dump, but which

denied damages that appellants alleged they suffered as a result of the nuisance. In 1956, the appellant, Imogene Moore, and her husband, now deceased, conveyed a five acre tract of land to the appellee, and the appellee used the tract thereafter as the city dump. The deed of conveyance contained three covenants wherein the appellee agreed: (1) to erect a fence to prevent debris from blowing onto adjoining lands; (2) to chemically treat the garbage so as to prevent objectionable odors; and (3) to purchase and use equipment to bury the garbage.

Appellants Moore and her daughter, Mona Phillips, own acreage which adjoins the dump. Appellant Ron Stallings is the executor of the Wesley Stallings Estate which has an interest in land located next to the dump. The fourth appellant, Richard Conley, is a tenant who farms the lands owned by Moore and Phillips. In 1976, twenty years after the dump was established, the appellants filed this action against the appellee. The cause was not tried by the court until October, 1979. The appellants' complaint as amended alleged that the appellee breached the three covenants contained in the 1956 deed, and that its actions constituted inverse condemnation, i.e., the appellee's actions amounted to a taking and devaluation of the adjoining land owned by Moore, Phillips and Stallings. The relief sought by appellants was for an order to enforce the deed covenants, an injunction to abate a nuisance caused by the dump and damages suffered due to inverse condemnation and a loss of crops.

Appellants first contend that the lower court's decree entered in March, 1980, offers no real relief because it will not provide for abatement of the nuisance which the Chancellor found to exist. The Chancellor ordered the appellee to take the following corrective measures within sixty days of its decree so as to abate the nuisance:

(a) The top surface of the dump site shall be graded so as to eliminate water pockets or pools from forming on the top of the mass;

(b) The sides of the dump site should be graded and

sloped at such an angle which would permit proper drainage of rain water falling upon the site; and,

(c) The digging and maintaining of ditches in an area immediately adjacent to the dump site, on both the East and West sides, for the purpose of collecting and carrying off water either falling upon or accumulating at the dump site. Such ditches should connect with existing drainage ditches on the South side of the dump site.

The court's order, appellants argue, does not go far enough. In a motion to reconsider, they asked the court to require the employment of an engineer to do a feasibility study to include surveys for drainage ditches, tests for leachate and plans for covering the refuse to prevent further accumulation of leachate.

The Chancellor has a great deal of discretion regarding the question of whether and to what extent injunctive relief should be granted. *Arkansas Community Organization for Reform Now* v. *Brinegar*, 398 F. Supp. 685 (E. D. Ark. 1975), affirmed 531 F. 2d 864 (8th Cir. 1976). It is also settled law that whatever judgment is entered takes its validity from the action of the court based on existing facts and not from what may happen in the future after the court has rendered its judgment. *Brotherhood of Locomotive Firemen and Enginemen* v. *Simmons*, 190 Ark. 480, 79 S.W. 2d 419 (1935). In the instant case there is no evidence within any degree of certainty that the migration of leachate from the dump to adjoining lands was a problem. One witness, an inspection engineer-geologist with the State Department of Pollution Control and Ecology, testified that he saw a small amount of leachate coming from the dump at its northeast corner, but later admitted that he had not determined leachate had caused damage to any crops. This same witness related that he dug a ten foot hole on the east and west sides of the dump and no leachate had seeped into either hole. Another employee, a field inspector, of the same State agency, stated that leachate could deplete the growth of crops, but again offered no evidence that it had. Certainly, if any nuisance and causally connected damage to crops by leachate could

be established in the future, the appellants would not be foreclosed from bringing an action at that time. From a review of the record before us, however, we find that the facts do not establish or warrant the commission of an engineer. We are satisfied that the Chancellor exercised appropriate discretion as to the extent of what actions he required of the appellee to alleviate the existing nuisance.

The second point for reversal raised by appellants concerns the trial court's denial of damages. The court's decree denied damages to Moore and Phillips premised on the doctrines of laches and equitable estoppel. Stallings and Conley were refused damages because proper evidence was not presented which complied with the Arkansas law for loss of growing crops.

Although the lower court's decree did not specifically deal with the inverse condemnation issue, it is clear that damages were not awarded to the appellant landowners, Moore, Phillips and Stallings on this theory. These appellants did offer proof through testimony on this issue by a real estate appraiser, but it is difficult to discern from the record on what basis the Chancellor denied the relief sought. Moore and Phillips did not have a claim for crop damages. Thus, the only common loss which Stallings could have with Moore and Phillips, is a devaluation of their respectively owned properties. Again, the court denied Moore's and Phillips' damage claims because of laches and estoppel, but was silent as to Stallings except for his claim for crop damage. Of course, we review Chancery cases *de novo*, and if the Chancellor is correct for any reason, we affirm the decision. *Apple* v. *Cooper*, 263 Ark. 467, 565 S.W. 2d 436 (1978).

We agree with the Chancellor that the doctrine of laches does apply to the condemnation damage claims. The Moore family, including Phillips, has owned the property adjoining the dump prior and subsequent to the time the dump was established. Stallings testified that his adjoining property has been owned by his family since the 1940's. These appellants failed to file any action for inverse condemnation until 1976, i.e., twenty years after the appellee commenced

operation of the dump. By the time this case was tried in 1979, they offered evidence that Stallings' land was valued at $1,800 per acre and the Moore and Phillips properties were worth $1,200 per acre. The appellants' real estate appraiser then rendered his opinion that their entire tracts of land were decreased in value because a number of acres contained in each tract could not be cultivated due to the adjoining dump. He valued Stallings' loss at $9,600 and Moore's and Phillips' losses at $16,800. In weighing this evidence, we take judicial notice that the value of farm land has materially increased in the past twenty years, and during the same period, the dollar has continued to diminish in purchasing power. *Tomlinson* v. *Williams*, 210 Ark. 66, 194 S.W. 2d 197 (1946); *Sinkhorn* v. *Meredith*, 250 Ark. 711, 466 S.W. 2d 927 (1971).

Our Supreme Court has held that when a person, who knows his rights, takes no step to enforce them until the condition of the other has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as estoppel against the assertion of the right. *Dickenson* v. *Norman*, 165 Ark. 186, 263 S.W. 387 (1924). We find that the tremendous increase in the value of land alone in the past twenty years would have permitted the Chancellor to apply the laches doctrine against Moore, Phillips and Stallings. This fact coupled with the devaluation of today's dollar certainly places the appellee at more of a disadvantage than if appellants had pursued their condemnation claim at some reasonable time after the dump was established in 1956.

Before leaving the damage issue relative to inverse condemnation, we also note that the appellee offered expert testimony to the effect that the market value of the land owned by these appellants was not affected by the city dump. Thus, the Chancellor was presented with opposing expert opinion evidence, and he may well have relied on the opinion of appellee's expert witness in denying the appellants' claims.

The appellants Stallings and Conley also sought damages to crops they lost on acreage located next to the dump,

and they presented evidence that each suffered respective losses of $5,502 and $14,802. In considering these requests for damages, the Chancellor held that Stallings and Conley did not present proper evidence to sustain their alleged damages for loss of crops. Appellee contends that laches also should bar any crop damage claims because, as noted earlier, the Stallings had owned and farmed their land since the 1940's, and Conley testified that he had leased land from the Moores and farmed it for eight years, which was sometime in 1971.

A study of the decree and record reflects that the Chancellor did not consider laches as applicable to the loss of crop claims, but based his decision only on the fact that such crop damages were not properly sustained by the evidence presented. We agree with the Chancellor. However, the measure of damages the Chancellor appears to have used to make his decision we find is erroneous. Before we discuss the measure of damage issue, we will first dispose of the issues raised by the appellee regarding the statute of limitation and laches and their applicability to appellants' claims for crop damages. The applicable statute of limitations to the facts at bar is found in Ark. Stat. Ann. § 37-206 (Repl. 1962) which provides for a three year limitation for injuries to real property. See *Consolidated Chemical Industry, Inc.* v. *White*, 227 Ark. 177-178, 297 S.W. 2d 101 (1957). In accordance with § 37-206, Stallings and Conley limited their claims, seeking damages commencing in 1973 or three years prior to the filing of this action in 1976. Although there are other legal problems relative to these appellants' request for crop damages, we find no evidence in the record which limits their claims to less than the statutory three year period, and we, therefore, find laches does not apply to these specific claims.

The primary issue to be decided, and previously mentioned, is what is the measure of damages in view of the evidence presented in the trial below. Once we make this determination, we can then decide if Stallings and Conley presented proper evidence to meet their burden of proof to establish the damages to which they contend they are entitled. The burden is clearly on these appellants. *Adams* v. *Adams, Ex cx*, 228 Ark. 741-745, 310 S.W. 2d 813 (1958).

First, we reject appellee's contention that the measure of damages to crops set forth in AMI 2225 is applicable since its terms contemplate the destruction of a mature crop. The facts in the record before us indicate that no crops that may have been planted grew to maturity. Stallings testified that before the seeds he planted germinated, the rats would literally dig them out of the ground. He related that he could not plant because the rats would take (destroy) the plants. Conley later testified that 1979 was the first time in eight years he had a crop because of some kind of acid in the soil which came from the dump. The Supreme Court in the case of *Farm Bureau Lumber Corporation* v. *McMillan*, 211 Ark. 951-954, 203 S.W. 2d 398 (1947) stated the rule we must follow in selecting the correct rule or measure to determine damages to crops:

> ... if the total destruction of the crop was at a time when the crop was too young to have a market value and when it was too late to plant another crop, the "rental value of the land" is the rule that governs; but if the destruction of the crop was at a time when the market value could be determined, then the "market value of the crop" is the rule to govern ...

In considering the evidence before us in view of the rule stated in *McMillan*, we find that the rental or usable value of the land was the correct criterion or measure to be applied to the facts at bar. The proof presented by the appellants concerned the market value of what they believed would have been their average yield per acre but for the damage caused by the appellee's dump. Since the evidence in the record is insufficient regarding the rental value of the acreage appellants contend was damaged, we would agree that the Chancellor's denial of the damages to crops was correct.

The appellants petition this court to remand this cause to the Chancellor for a hearing on the damages if we, as we have here, determined the proof offered by appellants was insufficient. Where a case has been once heard upon the evidence or there has been a fair opportunity to present it, we would not usually remand a case solely to give either party

an opportunity to produce other evidence. This rule is not imperative, and this court has the power, in furtherance of justice, to remand any case in equity for further proceedings, including hearing additional testimony. *Ferguson* v. *Green*, 266 Ark. 556, 587 S.W. 2d 18 (1979). It has also been a long standing practice and rule of our Supreme Court, which we adopt as well, that Chancery cases will not be remanded for further proceedings when we can plainly see from the record what the rights and equities of the parties are. *Prickett* v. *Ferguson*, 45 Ark. 177, 55 Am. Rep. 545 (1885), and *Ferguson* v. *Green, supra.*

From the record we are unable to decide the issue regarding crop damages without remanding. As we mentioned earlier, it appears from the record, the court's decree and the parties' briefs that the parties and the Chancellor relied on the measure of damages for mature crops as is set forth in AMI 2225. Of course, we have held this was error. Our Supreme Court has held that when all the parties tried a case upon an erroneous theory, the court may exercise its discretion to remand so that pertinent facts, not fully developed, might be ascertained. *Brizzolara* v. *Powell*, 214 Ark. 870, 218 S.W. 2d 728 (1949).

It is obvious from the record that the court and the parties were concerned with an erroneous standard when considering appellants' claims for damages to their crops. We in no way imply that either the court or appellee had the duty to try appellants' case. However, in accordance with the principle announced in *Brizzolara* and in the furtherance of justice, we remand this cause with directions to permit these appellants and the appellee to present further evidence relative only to any damages Stallings and Conley may have suffered to their crops in view of the measure or rule stated in *Farm Bureau Lumber Company* v. *McMillan, supra.* The proof as to damages at the hearing will be restricted in one respect. Since the record does reflect that in 1977 Stallings did not farm his six acres in question because it was a wet year, we hold that any damages he sustained in 1977 were not due to appellee's dump.

For the foregoing reasons we affirm the lower court's decision except that part which pertains to claims for crop damage by Stallings and Conley which is reversed and remanded for proceedings consistent with this opinion.

Affirmed in part and reversed and remanded in part.